## Wise *v.* Wise, Appellant.

Argued April 18, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

600

William J. Graham, with him Jackson & Troutman, Luther C. Braham and Darrell L. Gregg, for appellant.

John L. Wilson, for appellee.

OPINION BY HIRT, J., July 19, 1945:

We are in accord with the conclusion of the master and of the lower court that the charge of indignities has not been sustained. But from our appraisal of the evidence we are unable to agree that libellant's testimony rises to that high degree of proof essential to establish desertion, either in November 1941, as the master found, or on September 26, 1939, the date fixed by the court, or at any other time.

The case is not free from difficulty. The master who observed them described the libellant as "an amiable, intelligent and pleasant person, member of a prominent and highly respected family of Butler, Pennsylvania, forty-six years of age," and the respondent as "a personable young lady of about the same age, of good education and refinement." The master might have added that libellant, wilfully or otherwise, has never made a sustained effort to meet either his marital or his business responsibilities; and that the conduct of neither of the parties conforms strictly to a conventional pattern.

Following their marriage in March 1933 the parties lived with libellant's mother until October 1934; then in a furnished house for about a year. In 1935 they moved

to Jefferson Apartments in Butler and lived there with their two children until the separation in 1939. The facilities for outdoor life for the children, near the apartment, were limited and during the summers of -1937 and 1938 libellant rented a cottage in the Nixon district known as the County Club, where the children and their mother stayed from June until November; libellant was there rarely. In June, 1939, respondent, with her husband's consent, went, with her children, to the home of her sister, Mrs. Mary Sloan, in Saxonburg, and spent the summer there, intending to return in October. Early in the summer libellant spent several nights at this place, but later, because of an argument with Mrs. Sloan, confined his occasional visits to his children. He was not denied admission to the home; the only condition imposed was that he "would not make a scene." In the meantime respondent supplied libellant with maid service at the apartment and bought necessary provisions. Libellant testified that throughout the summer he requested his wife to return to the Jefferson apartment and that she refused. Even if true, this did not amount to a desertion for the understanding was that she would not return with the children until fall. And when at his request she met him in the apartment in September, 1939, his suitcases were packed and he then left alone for New York and did not return until three months later. He remained but one day and then went back to New York. In the meantime he did not write to respondent and his address was unknown to her. His good faith is questioned also by his activity during the summer of 1939. While his family were at Saxonburg, he frequently spied upon respondent without making his presence known, or appeared at public places where she and her sister were being entertained. This may be the conduct of a jealous husband but it is equally probable that he then had divorce in mind. On her return to Butler the respondent, in the absence of her husband, lived with her children in the Jefferson apartment from November

1939 until February 1, 1940. It is significant that libellant did not join her there. She then removed the furniture, after consulting with libellant's mother, placed it in storage, and sublet the premises to May 1, 1940, the end of the lease. With libellant's consent she took her children to Florida. He followed her there but though in communication with her, did not make his address known. He there suggested that they rent a pretentious Miami Beach residence for the summer. Her sensible reaction was that he first get an income adequate to maintain it. She refused to rejoin him but only because he had no place to live. He contemplated divorce throughout this period while in Florida and suggested to her that she start the action. She returned in May 1940 to a sister's home in Pittsburgh. After her return libellant insisted that she come back to him, but although he testified that he offered to rent one of two available (but unsuitable) houses in Butler, he never did provide a home to which she could come. Libellant was the beneficiary of a spendthrift trust of $30,000; he owned the Eagle Printery which was profitable when given attention; he also received gifts of money on occasion, when in financial straits, from members of his family. Respondent had learned that his family threatened to stop further financial aid to him unless he attempted to effect a reconciliation with his wife. There is some justification for her belief that the above offers to establish a home were made for that reason and not in good faith. She had been neglected; but she had not deserted her husband and there was no obligation on her to seek a reconciliation. *Mitchell v. Mitchell*, 142 Pa. Superior Ct. 599, 16 A. 2d 725. The separation at its inception was by mutual consent and no burden rested on respondent, in the absence of clear and satisfactory proof by libellant of efforts made by him in good faith to bring about a reconciliation. *Franks v. Franks*, 129 Pa. Superior Ct. 487, 196 A. 578.

Referring to the period after her return from Florida in 1940, she testified: "I felt that in view of his previous

actions he should make the offer [to reëstablish a home]. Of his conduct throughout our years together he had never shown any interest in anything. Never stayed any length of time . . . he never showed up for meals, he repeatedly asked me to get a divorce. . . . He never showed any interest in a home. . . . If he had showed any signs of reformation I would have returned." Without consulting her husband, respondent in 1941 bought a cottage, financed by her own resources, at Nixon, where she and her children have lived. She did not request her husband to join her there.

At the hearing, when asked: "Are you willing now to return?" respondent's answer was: "Not in the light of his past conduct." Q. "In other words, if he were to offer to establish a home, consistent with the station in life to which you and he and the children have been accustomed and which would meet with your favor, would you refuse to?" A. ". . . after the humiliation I've been put to these past few months, I could not return." This admission is not evidence of either a present or prior desertion. During the summer of 1939 while respondent was at Saxonburg he entertained women in the apartment in Butler under questionable circumstances. We need not go into detail nor scrutinize the testimony of his conduct and his attitude toward his wife to determine whether it rises to the degree of proof necessary to a divorce were she the libellant. Taking her at her word, as against the conduct on the part of libellant, impugning his good faith in his offers to resume the marital relation, in our opinion, such clear proof as the law demands (*Daly v. Daly*, 137 Pa. Superior Ct. 403, 9 A. 2d 192) is lacking and nothing more than a separation agreeable to both has been established. Neither wanted to live with the other.

We were impressed with the candor and apparent frankness of respondent and her witnesses. There is no criticism of her as a mother and she has encouraged a close and affectionate relationship between the children

and their father. Her witnesses support her testimony. On the other hand libellant's testimony stands alone. Since it has been contradicted and shaken by testimony on behalf of respondent and there are no convincing circumstances which discredit this otherwise credible testimony, libellant, in our opinion, has not made out a case on the charge of desertion. *Kurtz v. Kurtz,* 124 Pa. Superior Ct. 588, 189 A. 569. It may be noted that other witnesses were available to him. From the fact that he did not call them, it may be inferred that their testimony if called would not have been helpful. *Duchossois v. Duchossois,* 139 Pa. Superior Ct. 1, 10 A. 2d 824.

Decree reversed at libellant's costs.