## Tanner, Appellant *v.* Tanner

638

Argued November 19, 1946. Before Baldrige, P. J.,
Rhodes, Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*Bronte Greenwood,* for appellant.

*John F. Thaete,* for appellee.

Opinion by Baldrige, P. J., December 11, 1946:

The wife filed a libel seeking a divorce on the grounds
of cruel and barbarous treatment and indignities. The
learned court below, sitting without a jury, found that
she failed to sustain her charges and dismissed the ac-
tion. The wife, dissatisfied with the disposition of the
case, appealed.

The determination of the appeal hinges largely on
the credibility of the conflicting testimony of the wife
and husband. While it is our duty to carefully examine
the testimony and base our conclusion on our own inde-
pendent judgment, we realize the judge who saw the wit-
nesses, observed their manner, and heard them testify,
had a better opportunity to determine their credibility
than we, who must rely upon what appears in cold type.
Where, as here, the witnesses are equally interested and
flatly contradict each other, the conclusion of the trial
judge should not be "lightly disturbed." If a doubt exists
we are warranted in resolving it in accordance with the
conclusion reached by the trial judge: *Wick v. Wick,*
352 Pa. 25, 42 A. 2d 76; *McKee v. McKee,* 159 Pa. Su-
perior Ct. 233, 48 A. 2d 4.

If we could accept as verity the version given by the wife of their matrimonial life and her troubles, we could readily dispose of this appeal, but after a study of the testimony we, like the lower court, have the distinct impression that she, in her zeal to impress us with her misfortunes, has magnified her husband's shortcomings and given us a distorted account of the actual facts.

A decree in divorce may be granted on the testimony of the libellant alone if it is convincing, but when denied and there are circumstances not warranting the disregard of the contradictory testimony, the divorce will not be granted. The burden was on this libellant to establish by clear and satisfactory evidence that she was entitled to have the marriage contract annulled (*Rinoldo v. Rinoldo,* 125 Pa. Superior Ct. 323, 189 A. 566; *Wise v. Wise,* 157 Pa. Superior Ct. 599, 43 A. 2d 368; *Bozarth v. Bozarth,* 159 Pa. Superior Ct. 509, 49 A. 2d 198), and this she has failed to do.

The parties were married November 21, 1936, and lived together until sometime in November 1944. They were both well educated. He is an expert accountant and she attended college for at least two years. It appeared early in their married life that they were ill-mated. She alleged that on their wedding trip her husband was inattentive, embarrassed and humiliated her by showing interest in another young woman friend of his. She stated that he later mistreated her by making physical attacks upon her, by pushing his fingers into her arm, forcing her from the bed by placing his feet on the small of her back and caused her to suffer a sacro-iliac sprain, and that on another occasion he pulled her out of bed by the heels and injured her; that in the heat of arguments he would state that he would divorce her and on one occasion threatened her with a gun, which was not in his hands but in a bureau drawer and admittedly not loaded. She testified further that respondent would become enraged, hysterical, and announce that

"things were going to be the way he wanted them and if I cannot see them his way he would shoot the youngster." She gave considerable testimony relating to disputes concerning sexual relations, which, together with all her testimony of other incidents, have been considered but need not be further discussed.

The only important corroboration of her testimony was by Maurice Hogeland, an attorney who formerly represented her. He stated that he was present at a meeting when the custody of the child was in controversy and that one of the wife's objections to giving him possession of their son was that "he had threatened to dispose of the child" and that the respondent admitted he had made such threats but said "he was flustered or something to that effect." The respondent denied that he ever made any statement that could be interpreted as such a threat, but that he did say "I would rather see the child dead than raised in a family such as Mrs. Tanner was raised in. . . ."

The respondent made express denials of all the charges relied upon by the libellant, including abusing and striking her, using violence, and asserted that there was no real basis for her many complaints. He alleges he necessarily had to be away from home much of the time because of his business, but that he had been a dutiful husband, provided well for her wants and for all household needs. He seemed to attribute much of their marital trouble to his wife's unwarranted jealous disposition.

Undoubtedly there were many disagreements and altercations and these two people have incompatible temperaments, but the evidence of the libellant is not so preponderating as to warrant the granting of a divorce: *Hartley v. Hartley,* 154 Pa. Superior Ct. 176, 35 A. 2d 591.

Decree affirmed.