## Chasman *v.* Chasman, Appellant.

Argued April 28, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*William A. Gray,* for appellant.

*Charles E. Kenworthey,* with him *George G. Parry, Jr.,* and *Schnader, Kenworthey, Segal & Lewis,* for appellee.

OPINION BY ARNOLD, J., July 17, 1947:

In this divorce case the court below heard the testimony and entered a decree in favor of the husband-libellant. The wife-respondent appeals.

The respondent raised a preliminary question alleging that libellant was a resident of Montgomery County

and not of Philadelphia County where the libel was filed. That issue was referred to a master whose finding for libellant was adopted by the court. This issue did not raise jurisdiction generally, as it is admitted that the libellant was born in, and has always been a resident of, this state. It is an attack on *venue* and it was waived by the respondent when she entered a general appearance and took rules for a bill of particulars and for alimony and counsel fees, prior to raising that question: *Machmer v. Machmer,* 62 Montgomery, 69; 3 Grant 155. Cf. *Commonwealth ex rel. Camp v. Camp,* 150 Pa. Superior Ct. 649, 29 A. 2d 363. Since she lived in Philadelphia the respondent was not harmed in any way. It may be added that upon examination of the evidence we come to the same conclusion as did the master. The third assignment of error is overruled.

No legal question is presented on the merits, but as usual we are concerned with only the credibility of witnesses and the weight to be given their testimony.

The libellant testified that a difference of opinion had arisen about his wife going away with the child on the Saturday before the Monday that she left permanently; that he did not want the child away at a time he was not working and could be with her. That the respondent returned about midnight on Sunday, that they quarreled and she told him he was a bum, was unworthy of the child's affection, and that she would see to it that he would not either see or have anything to do with the child. That she became hysterical and used bad language, and finally struck him with an old window shade roller. That he took it from her, that she screamed and yelled, that he took her by the wrist and she got away from him, but in so doing struck her head on a shelf; that he applied cold compresses to the bruise and finally succeeded in calming her. That he arose the next morning, Monday, January 25, at 8:30, and found that she had left with the child, and that the following March

she, with her attorney, arranged to take her goods away. At this time there was another scene in his drugstore in which she again used violent language and threatened to ruin his reputation. He further testified that he had never abused her, had always maintained her properly, and neither struck her nor called her names, and that he would have taken her back if she had offered to come back. The libellant was corroborated by his father as to the events in March.

On this state of the record the case passed to the respondent. Four factors were admitted by both sides: (1) The wife-respondent left their common habitation on January 25, 1943, taking with her their daughter, then nine years of age; (2) thereafter the respondent lived with her sister in Philadelphia; (3) that she absented herself from libellant's home for more than two years; (4) that she never offered to return to it, or to resume the marital relation, and made no overtures for reconciliation. The respondent makes no claim that this was a consentable separation. She claims that she had to leave because she could no longer put up with his treatment. To justify her leaving these had to be such reasons as would entitle her to a divorce. *Urbaczewski v. Urbaczewski*, 158 Pa. Superior Ct. 614, 45 A. 2d 925; *Bates v. Bates*, 153 Pa. Superior Ct. 133, 33 A. 2d 281. The respondent bases such justification on two grounds: (1) That her husband "by cruel and barbarous treatment, endangered . . . [her] . . . life . . . ;" and (2) "offered such indignities to . . . [her] person . . . as to render . . . her . . . condition intolerable and life burdensome.": Divorce Law of 1929, section 10, paragraphs (e) and (f); 23 PS 10.

There is a complete absence of any evidence on behalf of the respondent that her life was endangered or that there was a reasonable apprehension thereof.

She therefore stands on the other ground, indignities which rendered her condition intolerable and her life

burdensome, and that these were of the kind and character as would entitle *her* to a divorce from him.

An examination of respondent's evidence reveals both distortion and exaggeration, but the gist of her evidence was that although she did not leave with his consent, she was justified in leaving (1) because her husband frequently struck her and generally treated her contemptuously; (2) that her husband was penurious and gave her little or no money and not enough for adequate food; (3) that he was a sexual pervert and that she could not put up with such conduct. While she testified concerning all of these matters with some particularity, nevertheless she made frequent changes in the details of her story. Of course, if the things to which she testified were true, and if they rendered her condition intolerable and life burdensome, and *because* of this treatment she left him, she was not guilty of desertion.

It is quite apparent that she did not leave him for any such reasons, and she herself so testified. Instead, the reason for her departure was because he refused to place the title to the house and drugstore (in Conshohocken), and the bank account, in both their names as she requested. In the course of her long and somewhat rambling account of her husband's misconduct, the trial judge questioned her: "Q. If he had agreed to put your name on the bank account and make you a partner in the store—that's what you wanted, wasn't it? A. Yes. Q. *And at that time if he had met those requests, if he had agreed to do it, you would not have left then, would you?* A. *Well, personally, I think everything would have turned out all right if I knew I had the security.*" (Emphasis supplied.) In the course of her redirect examination because of her conflicting answers, the court again asked the question: "Q. You mean to say that if your husband had put your name in the bank account and also entered it in the business, as a result of your request on Friday, you would have left him on Monday

regardless?" To this she made an equivocal answer, whereupon the court said: "Pay attention to the question. Repeat the question." The question was then read and she replied: *"No sir; I would not have left him. I had no intentions of leaving."* (Emphasis supplied.) Later on she tried to qualify this by saying that he would have to stop abusing her sexually, but her testimony in this regard is not persuasive.

She alleged that her husband's abuse was so severe that she had to see a doctor, but she did not call the doctor as a witness. She alleged that she went with her husband when he consulted two physicians with reference to his alleged sexual perversion. These doctors were not called by her. All such allegations were flatly denied by the libellant.

Not only was the respondent far from proving that she left her husband because of his ill-treatment of her, but by her own admissions it is shown that she left because he would not divide his assets with her. Her claim of perversion by her husband is entirely unsupported, but according to the evidence was never the subject of any complaint by her to her physician, to his physician, or apparently to her two sisters who testified in her behalf.

Since her leaving was for the unjustifiable reason that he would not divide his assets with her, it follows that the libellant had no duty to invite her back or to attempt reconciliation: *Wise v. Wise,* 157 Pa. Superior Ct. 599, 43 A. 2d 368. The separation being without a legal cause and not consentable, it was malicious, and when persisted in for two years entitled the libellant to a divorce.

Finally, we have made a careful and independent examination of the testimony, and have come to the same conclusion as did the court below.

Decree affirmed.