## Weber v. Weber

*Joseph Nissley*, for plaintiff.
*James M. Quigley*, for defendant.

SOHN, J., October 23, 1951.—This is a divorce action in which a special appearance de bene esse was filed by defendant wife, as well as certain preliminary objections to the complaint. These objections were originally five in number, but by stipulation of counsel filed of record, were reduced to the sole question whether or not plaintiff had a residence in Dauphin County at the time the action was instituted. Plaintiff's answer to defendant's preliminary objections raises the question of the right of defendant to file preliminary objections raising a question of jurisdiction. His contention is

that the matter is a question of venue only and that venue cannot be attacked by preliminary objections.

Pennsylvania Rule of Civil Procedure 1125, which controls and regulates the pleadings in divorce actions provides as follows:

"Pleadings allowed

"(a) The pleadings in an action are limited to a complaint, an answer thereto, a bill of particulars, a preliminary objection and an answer thereto.

"(b) Preliminary objections are available to any party and are limited to

"(1) a petition raising a question of jurisdiction;

"(2) a motion to strike off a pleading because of lack of conformity to law or rule of court;

"(3) a demurrer;

"(4) a petition raising the defense of lack of capacity to sue or pendency of a prior action."

Rule 1121(b) of Rules of Civil Procedure provides:

"Except as otherwise provided in this chapter, the procedure in the action shall be in accordance with the rules relating to the action of assumpsit."

Plaintiff relies upon the recent case of Muldoon v. Muldoon, 69 D. & C. 413, as authority for the proposition that preliminary objections, raising a question of venue, cannot be filed in a divorce case. Plaintiff in that case claimed a residence in Montgomery County while defendant insisted that he was a resident of Schuylkill County. The issue was made to turn upon the proposition that "jurisdiction" did not include "venue" and that "jurisdiction" as used in the Divorce Act of May 2, 1929, P. L. 1237, sec. 5, contemplated State-wide power in the courts of common pleas to grant divorces and annul marriages, provided plaintiff had been a bona fide resident of the Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel, as required by section 16 thereof. "Venue," it was pointed out, was not

a matter of "jurisdiction," but only the right of a certain county to entertain a divorce action. The Divorce Act of 1929, sec. 15, as amended, while providing for original jurisdiction of divorce in the courts of common pleas, also provided that:

"All petitions or libels for divorce shall be exhibited to the court of the county where either libellant or respondent resides." These legislative provisions, so far as they relate to "venue" are now superseded by Rule 1122 of Rules of Civil Procedure which rule provides:

"The action (divorce) may be brought in and only in the county in which the plaintiff or the defendant resides."

We think that jurisdiction, as contemplated by the Supreme Court in the Rules of Civil Procedure, was not used in the narrow sense, but broadly to cover the matter of venue in a particular county court. Although the courts of common pleas have jurisdiction generally in divorce, no certain county court has jurisdiction unless either plaintiff or defendant resides therein.

The preliminary objection in the nature of a petition raising a question of jurisdiction may raise the same objections as in assumpsit. Rule 1121 (*b*) having provided that "except as otherwise provided in this chapter, the procedure in the action (divorce) shall be in accordance with the rules relating to the action of assumpsit", we find that rule 1017 (*b*) provides that preliminary objections are available to any party and are limited to "(1) a petition raising a question of jurisdiction" and inter alia, to four other matters with which we are not here concerned. This rule replaced the practice under the Act of March 5, 1925, P. L. 23, 12 PS §672 et seq., which authorized the raising of jurisdictional questions by a preliminary petition. Under the Act of 1925, superseded by rule 1017 (*b*) (1), "jurisdiction" has been interpreted by the courts to

include objections to venue. Anderson's Pennsylvania Civil Practice, vol. 3, in the notes on pages 412 and 413, says:

"Rule 1017(b) (1) was adopted with the intention of preserving the prior scope of the Act of 1925, as evidenced by the Rules Committee Note to that rule. The word 'jurisdiction' should accordingly be given this broader scope in interpreting the procedural rules."

Anderson further says, page 311, vol. 2, of his Pennsylvania Civil Practice:

"The preliminary objection may therefore be used [under Rule 1017(b) (1)] to raise the objection of . . .

"(2) Improper venue.

"The venue is improper when as a matter of domestic or state law the court in which the action has been brought although it has jurisdiction of that class of actions is not the proper court in which to have brought the action because it should have been brought in another county." Loprete v. Langcliffe Collieries, Inc., 67 D. & C. 438 (1948); McCall v. Gates, 354 Pa. 158 (1946); Jones v. Jones, 344 Pa. 310 (1942); Gilbert v. Lebanon Valley Street Ry. Co., 300 Pa. 384 (1930); Lobb v. Penna. Cement Co., 285 Pa. 45 (1926); Kolesar v. Slovak Evangelical Union, 122 Pa. Superior Ct. 318 (1936); Turner v. Atlantic Refining Co., 28 D. & C. 337 (1936).

"All of these decisions turned on the question of venue although the courts obscured this by stating that the question was one of service or jurisdiction. Closer examination reveals that the service was defective only if the action was not properly brought in the particular county or that jurisdiction was lacking over the corporate defendant only if the action was not properly brought in the county. Such cases in fact turn on the propriety of the venue and the Act of 1925 was repeatedly used to raise such questions."

16

In commenting on the Muldoon case, supra, Anderson says, at page 312, in the footnote:

"The decision is technically correct in distinguishing between venue and jurisdiction but overlooks the fact that under the Act of 1925, superseded by Rule 1017 (b) (1), 'jurisdiction' was interpreted by the courts to include objections to venue. Rule 1017(b)(1) was adopted with the intention of preserving the prior scope of the Act of 1925, as evidenced by the Rules Committee Note to that rule. The word 'jurisdiction' should accordingly be given this broader scope in interpreting the procedural rules.

"This is confirmed by Rule 128 which provides 'the courts may be guided by the following presumptions among others: . . .

" '(d) that if the Supreme Court has construed the language used in a rule or statute, the Supreme Court in promulgating a rule on the same subject which employs the same language intends the same construction to be placed upon such language.'

"If the interpretation in the Muldoon case is followed, there is no procedural means of objecting to the venue. The fact that various chapters of procedural rules specify the venue to be observed indicates that it was not intended to diminish the importance of venue. Rule 127(c) (6) authorizes the court to consider 'the consequences of a particular interpretation' and is justification for adopting the broader meaning of 'jurisdiction' which includes 'venue,' in order to avoid the procedural gap which would otherwise exist."

If defendant in the case at bar had not filed an appearance de bene esse and objected preliminarily, she would have acknowledged the venue to be properly laid in Dauphin County. Koch v. Koch, 60 Dauph. 1 (1950), and Chasman v. Chasman, 161 Pa. Superior Ct. 77 (1947), are both authority for the proposition that although jurisdiction can be raised at any time, a de-

fendant by his general appearance waives any irregularity in venue. We thus must hold, and do so find, that defendant in the instant case was entirely within her legal rights in entering an appearance de bene esse and in filing her preliminary objections to the jurisdiction of the Dauphin County Court.

We now come to the further question, following these objections, as to whether plaintiff was a bona fide resident of Dauphin County at the time he instituted his action in divorce. Depositions were taken upon this subject alone. There seems to be no question but that plaintiff, prior to coming to Hershey, was a resident of Mt. Joy, in Lancaster County. That domicile having been shown to exist, it is presumed to continue until another domicile is affirmatively proved: Pusey's Estate, 321 Pa. 248; Smith v. Smith, 364 Pa. 1. The burden is upon one alleging a change of domicile to prove residence in a new locality and the intention to make that his permanent home: Barclay's Estate, 259 Pa. 401, 404; Chidester v. Chidester, 163 Pa. Superior Ct. 194; Reimer v. Reimer, 160 Pa. Superior Ct. 509.

From the testimony taken upon the question whether plaintiff was a resident of Dauphin County or Lancaster County, it appears that he is a contractor engaged in building houses in Lancaster County and in Dauphin County. He testified that he moved to Hershey in Dauphin County on April 1, 1950. She said that they separated on February 22, 1947. Most of his contracting business was and is now conducted in Lancaster County. As a result of their difficulties, a support order was entered against him by the Lancaster County court and he was also given the right of visitation to see his son once every week. Beginning about October 20, 1945, plaintiff lived for two years at Marlboro, N. J.; Luray, Va., for about five months, and at Goshen, Ind., for one summer. After returning to Pennsylvania, he testified he lived at three different places in

Mt. Joy before moving to Hershey. Nearly all of his banking business was done in Mt. Joy for the reason that most of his contracting operations were thereabouts.

In support of her contention that plaintiff is and was a resident of Lancaster County, defendant alleged:

1. That her husband was a member of the Mt. Joy United Brethren Church.

2. That he saw his son in Mt. Joy under a right of visitation pursuant to a court order of Lancaster County.

3. That he belonged to the East Petersburg A Cappella Male Choir.

4. That he was paying an order of support under order of the Lancaster County court.

5. That he keeps a bank account in the First National Trust Company, Mt. Joy, Pa., although she admits that she has received at least one support payment from a Hershey bank.

6. That he has built homes in Mt. Joy, Blossom Hill in Lancaster County, and several homes in Lancaster on Princess Avenue.

7. That until 1948 plaintiff lived at 127 East Main Street, Mt. Joy.

8. That he received mail in Mt. Joy.

9. That he has been a member of the Mt. Joy Lions Club.

10. That he lived at Mrs. Longenecker's home, located at 1287 East Main Street, Mt. Joy, Lancaster County, from 1948 until the spring of 1950, and that he kept his car or truck at that address.

Under cross-examination, defendant admitted:

1. That plaintiff had a room in Hershey located at 219 Cocoa Avenue.

2. That he got mail both at Hershey and at Mt. Joy.

3. That he has built at least one home in Dauphin County.

4. That it is not necessary for a member of the A Cappella Choir to reside in Lancaster County.

5. That it is not necessary for him to reside in Mt. Joy to belong to the Mt. Joy United Brethren Church.

6. That it is not necessary for a person to build homes in Lancaster County to reside in Lancaster County.

7. That she doesn't know how much time he is spending in his residence at Hershey.

8. That it is not necessary for a person who has a bank account in Mt. Joy to maintain his residence in Mt. Joy.

9. That he has had a room at 219 Cocoa Avenue, Hershey, Dauphin County, since April 1950, and that he has given this address as his residence.

The son of the parties, who is eight years old, testified that he spent his week-ends with his father and that he has stayed at his paternal grandmother's place on the Lititz Pike in Lancaster County, and that on three or four occasions during the past year he has been to spend the week-end with his father in Hershey at his father's room. He further testified that he had been to Hershey with his father as late as two weeks ago, prior to the time of the hearing, which was held on March 15, 1951.

Plaintiff then testified on his own behalf as follows:

1. That he lived at 219 Cocoa Avenue, Hershey, since the first of April 1950.

2. That he belonged to the Lions Club of Hershey and the Community Club of Hershey since May of 1950.

3. That he votes from Hershey.

4. That he has an office in Hershey.

5. That he keeps his business records there.

6. That he carries on his business and private mail from the Hershey address.

7. But that like every other person who has ever had more than one address, he keeps receiving some mail and advertising variety in Mt. Joy.

8. That he has built houses in the lower end of Dauphin County and the upper end of Lancaster County in and around Elizabethtown and in Dauphin County at Deodate.

9. That he has been trying to get a residence in the Community Building and the Community Inn at Hershey since 1949.

10. That finally he secured his present residence in 1950.

11. That it was his intention in early April 1950, when he moved to 219 Cocoa Avenue, Hershey, to maintain his residence there.

12. That he has maintained that residence since early 1950 and intends to continue it.

13. That he has been living at this address continuously since April 1950.

14. That he voted last fall at the fire house in Hershey.

15. That he rents a garage at 127 East Main Street, Mt. Joy, at the home of Mrs. Longenecker, to store his automobile, because he couldn't secure one in Hershey.

16. That he does not carry on any of his business from 127 East Main Street, Mt. Joy.

17. That he keeps his clothing at 219 Cocoa Avenue, Hershey, which is the home of Mr. and Mrs. Raymond Baum.

18. That when he leaves to visit his parents on Sundays, or on business, he always returns to his residence at 219 Cocoa Avenue.

19. That he was a resident of 219 Cocoa Avenue at the time he filed this complaint in divorce.

20. That he keeps all his personal belongings and some furniture at this address.

21. That he sang in the Mt. Joy Lions Club recently, but that one was not required to be a member of that club in order to sing in the minstrel show chorus.

Cross-examination developed the following:

1. That he eats at various restaurants in Hershey and at other places when he is out of town.

2. That he had a room at Mrs. Longenecker's in Mt. Joy temporarily until he could secure a place to live in Hershey.

3. That he is presently building some homes in Lancaster County.

4. That he still gets mail at his parents' home in Lititz, Lancaster County, Pa.

5. That he gave his address when he took his physical examination for a pilot's license June 2, 1950, as Lititz because that address had to correspond with the address of his original pilot's license secured October 20, 1945.

6. That since October 20, 1945, he has had residence at Marlboro, N. J., and Luray, Va., and Goshen, Ind., but always kept his pilot's license as Lititz, Pa.

Raymond S. Baum testified that plaintiff had been a roomer at his place since April of 1950 and that he stayed there continuously except over week-ends; that he keeps his clothing, books, records, files, radio and other personal property at this address; that he receives an extensive amount of mail at this address and belongs to the Lions Club and Community Club of Hershey. Mr. Baum testified that he rents the room to Mr. Weber by the month; that Mr. Weber received a lot of telephone calls on the house phone; that he has a considerable number of male visitors, particularly on business, at this residence and that he has entertained some friends in his room.

Mrs. Clara K. Baum, wife of Raymond S. Baum, testified that plaintiff paid his rent three months at a time; that he has had his son at this home to stay with him on three different occasions over the night, and in other matters substantially corroborated the testimony of Mr. Baum.

A consideration of the above testimony clearly establishes plaintiff's domicile. Legal domicile is where one has his true, fixed, permanent home and principal establishment to which he intends to return whenever absent: Dorrance's Estate, 309 Pa. 151. No fixed period of residence is necessary to create a domicile in a county. It is a question of intention, dependent upon all the circumstances: Dulin v. Dulin, 33 Pa. Superior Ct. 4; Hood's Estate, 21 Pa. 106. In the recent case of Koch v. Koch, 60 Dauph. 1, this court held a divorce action may be brought the next day following the day one moves into a new county, providing the residence is bona fide. Domicile has been ruled to be a matter of intention. Residence is a physical fact: Starr v. Starr, 78 Pa. Superior Ct. 579. Before a change of residence, there must be a residence in the new locality, and an intention to remain there: Verbeck v. Verbeck, 160 Pa. Superior Ct. 515; Alburger v. Alburger, 138 Pa. Superior Ct. 339.

Applying the rules of law to the facts in the instant case, the residence of plaintiff has been satisfactorily established to be in Dauphin County. Whatever may have motivated him in moving to Hershey is immaterial, except that his motives may throw some light on his credibility: Smith v. Smith, 364 Pa. 1. Here, however, his declarations of his intentions are corroborated by his proven acts, not only by his own testimony, but by the admissions of defendant herself, their son, and the two persons in Hershey with whom he lived. We do not feel that the fact that plaintiff has most of his business in Lancaster County and transacts his banking business there is controlling. Many business and professional men who have their business and professions in the City of Harrisburg and do their banking business there are residents of other counties and commute daily.

And, now, October 23, 1951, the preliminary objections to the complaint are overruled and defendant is permitted to file an answer to the complaint within 20 days from the date hereof.