Sadie A. SHIELDS, individually and as the natural guardian of Samuel James Shields, also known as Samuel Shields, Jr., a minor

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare.

No. 22009.

United States District Court
E. D. Pennsylvania.

July 24, 1957.

734

Walter Stein, Philadelphia, Pa., for plaintiffs.

Harold K. Wood, U. S. Atty., Henry J. Morgan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

LORD, District Judge.

This cause has been heard on the plaintiffs' complaint seeking review of a final decision of the Secretary of Health, Education and Welfare and the defendant's answer and motion for summary judgment thereon. The administrative decision, which is thus challenged, respectively denied Mother's Insurance Benefits and Child's Insurance Benefits to the plaintiff, Sadie A. Shields, and the minor plaintiff, Samuel James Shields, also known as Samuel Shields, Jr.

The matter is governed by the provisions of Title II of the Social Security Act of Congress, 42 U.S.C.A. §§ 401–416. Section 405(g) of that Act authorizes review of a final decision of the Administrator by action brought in the district court of the United States, and provides that:

" * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Adminis-

trator, with or without remanding the cause for a rehearing. The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive, * * * *"

The findings of the Administrator, in terms of the quoted statute, became the findings of fact of the Secretary under § 205(g) of the Act (42 U.S. C.A. § 405(g) ), since the Appeals Council of the Social Security Administration denied review of the decision of the Referee. Goldman v. Folsom, 3 Cir., 246 F.2d 776.

If there was substantial evidence upon which the Secretary acted, this Court is bound by his action, provided the law was properly applied by him. Ray v. Social Security Board, D.C.S.D. Ala.1947, 73 F.Supp. 58.

In order to determine the sufficiency of the evidence, in terms of the statute, we must scrutinize the record as a whole; we must assume responsibility for the reasonableness and fairness of the decision, Goldman v. Folsom, 3 Cir., 246 F.2d 776; and we must recall the adjuration of the Supreme Court that "Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function." Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456.

The administrative finding which is the nub of the present controversy is found in the Referee's decision:

" * * * that the deceased, before his marriage to the present claimant, had married Jean Elizabeth Dunlap Shiels, that he never procured a divorce from her, that she was living at the time of the deceased's marriage to the present claimant and at the time of his death."

If justified by the evidence, and based upon a proper application of the law, that finding is necessarily fatal to the plaintiffs' positions that they are the surviving widow and child of the de-

ceased wage earner. This result would follow by virtue of § 216(h) (1) of the Social Security Act, 42 U.S.C.A. § 416 (h) (1). That section provides that the applicable test is that which the courts of the state of domicil would use in determining the devolution of personal property.

▉ This Court, however, has come to the conclusion that this crucial finding is invalid in that it is insufficiently supported by the evidence· disclosed by the record. Looking at the matter in another light, it may be said that the Secretary's application of the law was incorrect with respect to the policy embodied in the presumption of the validity of an existing marriage. Insofar as he relied upon the case of Madison v. Lewis, 1943, 151 Pa.Super. 138, 30 A.2d 357 in page 6 of his opinion (Record 17), in particular, there was misapplication of the law, as will be more fully explained in due course.

Many of the facts are undisputed. The claimant, Sadie A. Shields, married Samuel Shields, ceremonially, in Baltimore, Maryland, on December 27, 1943—having been acquainted with him about five years at that time. One child, Samuel, also plaintiff herein, was born of this marriage on August 10, 1944. The claimant, Sadie, and the deceased lived together in Philadelphia until his death there on August 31, 1953.

There is no indication that the claimant had the slightest intimation that the deceased was not a single man at the time he married her. Nor did she have any such inkling, as the Referee himself finds:

" * * * 'until the night of the viewing', when one of the deceased's cousins stated to her that he might have left a surviving widow in Ireland."

As to the disputable facts, it is necessary to make references to the Record. Such record has been reviewed by this Court in its entirety.

The only witness at the hearing before the Referee was Sadie A. Shields, the claimant. The Referee offered in evidence papers in the Claim File, Exhibits 1 to 29, inclusive. Claimant's attorney objected to the admission of Exhibits 2, 11, 12, 15, 16, 21, 22, 23 and 29. All objections were overruled, although parts of the contents of certain exhibits were by the Referee ordered stricken as to numbers 15 and 16, being certain conclusions and inferences reported by Field Representatives in these exhibits which were in the form of Reports of Contacts.

▉▉ In finding that the decedent was previously married, the Referee relied on Exhibit 11. This is simply the report to that effect of one S. Leibovitz, Claims Assistant, on a form labeled Certification of Contents of Document(s) or Record(s).

Even if sworn, this report would not only be hearsay but would violate the salutary rule that:

" * * * in proving the terms of a writing, where such terms are material, the original writing must be produced, unless it be shown to be unavailable for some reason other than the serious fault of the proponent." McCormick on Evidence, 409 (1954).

Whereas the record shows that the claimant's counsel objected to the introduction of the Exhibit 11, the Referee's remark that "Counsel for the claimant stated that he did not desire to have the original certificate placed in evidence herein," is equivocal and, in any event, refers to a purported statement which is not in the record. For these reasons, Exhibit 11 is deemed no evidence whatsoever to support the finding in question.

Paragraph 2 of the Referee's reasons for his finding refers to a so-called admission by the deceased in a certain 1929 Petition for Naturalization. The exhibit, page 88, being Exhibit 21, is again in the form of an agent's certification. For the same reason—the Original Document rule—plus the additional fact that a 1929 admission as to an Irish marriage would be of doubtful probative force or even relevancy, the Exhibit 21

and the second reason are deemed completely insubstantial.

The Referee's third reason is:

"3. The certification made by the Bureau that it searched the divorce records from the years 1928 through 1944 at the Prothonotary's Office, City Hall, Philadelphia, and that no record exists of a divorce having been granted during these years between Samuel Shields (Shiels) and Jean Elizabeth Dunlap Shiels."

This negative evidence is entirely insubstantial. In the light of the present aspect of the evidence, there is for one thing no reason why the deceased should have been divorced from someone as to whom there is no competent evidence of marriage. For another matter, divorces can be granted at the domicil of either party, and it is at least clear that Jean Elizabeth Dunlap Shiels has never been a Philadelphian. As to the further matter of venue the Pennsylvania divorce law of the period in question specified "the court of the county where either libellant or respondent resides," 1929, May 2, P.L.1937, § 15, 1935, June 10, P.L. 294, § 1, 23 Purdon's Pa.Stats. Ann. § 15. Pennsylvania, however, follows the usual rule that requirements of venue are waived by the entry of a general appearance by the defendant. Chasman v. Chasman, 1947, 161 Pa. Super. 77, 53 A.2d 876; Teitelbaum, The Pennsylvania Divorce Law, 23 Purdon's Pa.Stats.Ann. pages 343, 347 (1955). A mere search of Philadelphia County records is therefore of minimal evidentiary worth. See Ray v. Social Security Board, D.C.S.D.Ala.1947, 73 F.Supp. 58, 61.

No evidential value or inference whatsoever *adverse* to the claimant can be gleaned from the last reason given by the Referee:

"4. The statement of the wage earner that he was 'single' in his application for a marriage license in 1943."

While there are no further numbered reasons given in the Referee's opinion as adopted by the Secretary, it does go on to refer to a certain compromise settlement *in the Orphans' Court of Philadelphia County.* Conceding that the compromise should not be deemed an admission against the interest of the claimant, the opinion nevertheless—in recapitulation—marshals the reasons heretofore discussed and adds to them the "position asserted [therein] by Jean Elizabeth Dunlap Shiels that she did marry the deceased and was never divorced. * * * "

The reference to such asserted "position" is assumed to be something contained in Exhibit 14 (Record 77–79), being the "Duplicate Copy of Settlement of Account of Estate of Samuel L. Shields, signed by Judge Klein, dated May 12, 1955."

To attach such significance to a recital in the compromise of a claim is extraordinary. It is even more unusual when sought to be reconciled with the Referee's specific denial that support for the claimant's position appeared in the first recital of that same document, i. e.:

"Samuel L. Shields * * * died on April 31, 1953, leaving to survive him, as his heirs-at-law and next of kin, his wife, Sadie Sattele Shields, and a son, Samuel James Shields, each entitled to one-half of his estate."

The later recital, which impressed the Referee, reads:

"The statement of proposed distribution recites that Jean Elizabeth Dunlap of Maghera, County Derry, North Ireland, claimed to be the surviving spouse of the decedent. By writing dated May 4, 1955 * * * it was agreed by counsel for all parties in interest that the said 'Jean Elizabeth Dunlap Shiels' should be paid the sum of $1,820 from the present estate * * * with further provisions not necessary to recite."

Repeated searches of the other exhibits, with reference to that Dunlap claim, have disclosed no other bases for

the recognition of the "position" asserted by the Irish claimant. The investigators' reports go both ways; on the one hand they report hearsay assertions that the claim from overseas is a fraud, and on the other hand some suggest that it might be establishable.

This Court must at least note the fact that the Orphans' Court recognition of a compromise is in no sense an adjudication of the Dunlap claim. The recital of heirship first quoted may or may not rise higher. At any rate, the opinion of the Referee seems strained in its reasoning that the compromise may be considered as the assertion of a "position" but the heirship recital may not be considered at all.

If inferences must be drawn from the Exhibit 14, no reason is seen why they would not be to the effect that the claimant Sadie is the widow of the wage-earner, and that Samuel is his heir and legitimate son.

■ It is trite to say that the law favors compromise, and extends privilege to those who choose to buy their peace. No citation is necessary for the proposition that it is unthinkable to recognize in one breath that a compromise is no admission, and then to go on in the next and rest a finding upon the theory that the mere assertion of a claim may support an inference of its validity.

There being no evidence left, in the light of the foregoing analysis, to support the administrative decision, it may seem gratuitous to elaborate the presumptions which favor the claimants. It is necessary to do so, however, since the Referee discussed that subject in his opinion. At his page 6 (Record 17) he writes:

"The referee has given the most serious consideration to the presumption and charity of the law in the Commonwealth of Pennsylvania, which is in favor of the legitimacy of every child. Rosenberger's Estate, 1949, 362 Pa. 153, 65 A.2d 377. However, presumptions cannot prevail in the face of contrary evidence, and the referee must find that the proof that the deceased had no capacity to marry the claimant is clear and direct. * * *

"While there is a presumption that the second marriage was an innocent one, that alone is not sufficient to overcome the previously existing presumption of the continued validity of the first marriage. Madison v. Lewis, 1943, 151 Pa. Super. 138, 30 A.2d 357. * * * *"

The cited case was an action of ejectment. The defendant claimed as devisee of an alleged husband of one Lucy. Defendant put in no evidence, resting solely upon the presumption that his marriage was innocent. Plaintiffs, on the other hand, proved to the satisfaction of the court that the alleged husband had in 1891 been duly married to one Sarah, and that a child was born to the husband James and his wife, Sadie. Sadie was still living in New York at the time of trial. There was proof that after James had gone through a form of ceremony with Lucy in 1909 (when Sadie was living), friends remonstrated with him as to the bigamous nature of his second marriage. His only answer was: "I know what I am doing"; he made no denial or explanation. No children were born of the second marriage.

The Pennsylvania Superior Court held:

"* * * As the case *developed on the trial* in the court below, the burden, in our opinion, was on the defendant, after the marriage between James Harris and Sadie Jones had been established and the fact that Sadie Harris was still alive had been clearly shown, to go forward with proof tending to show a divorce had been procured * * *. He produced no such evidence, nor any evidence at all, preferring to rest on the 'presumption of innocence' which he claimed attended James Harris's marriage to Lucy Cole." [151 Pa.Super. 138, 30 A.2d 359.]

738

The same opinion recognizes the established principle that when the presumption of legitimacy is added to that of "innocence", then the first presumption of the continuance of a status (the first marriage) is outweighed. Madison v. Lewis, 1943, 151 Pa.Super. 138, 143, 30 A.2d 357, citing and discussing In re Wile's Estate, 1897, 6 Pa.Super. 435; Sharpe v. Federal Cleaning Co., 1940, 144 Pa.Super. 231, 238–240, 19 A.2d 509.

It may be immediately noted that the cited Madison case is one in which the presumption as to the legitimacy of children was on the side of the first, rather than the second marriage. Again, the validity of the first marriage was unchallenged, and the existence of the first wife was undeniable. Furthermore, it was shown that the husband, at the time he remarried, was on notice that his later union was invalid if not bigamous.

The present case is infinitely different from the Madison case. Here, the suit is to recover Social Security benefits—by contrast with an action of ejectment. In the instant case the first marriage has by no means been proved. Even if it were proved, there is here the long lapse of time which aids the presumption in favor of the later marriage.

■ Again, the presumption of legitimacy here aids rather than opposes the claimants. That particular presumption is by no means a mere recognition of probability, but is rather one of the weightiest expressions of legal policy in the law. In re McAnany's Estate, 1927, 91 Pa.Super. 317, 321. See Bishop, Marriage and Divorce § 457 (6th ed.), quoted in Nixon v. Wichita Land & Cattle Co., 1892, 84 Tex. 408, 19 S.W. 560, 561 and in McCormick on Evidence, § 312, p. 653 (1954). See 9 Wigmore on Evidence, § 2506, p. 371 (3d ed. 1940); Pennsylvania cases collected and compared in annotation. 14 A.L.R.2d 9, 39.

The careful and conscientious opinion of the Referee is thus seen to have been based on evidence which falls far below ordinary standards. It was, moreover, lamentably short of the strict proof required to overcome the policy presumptions of the law as recognized in the Pennsylvania cases, e. g., Fritsche v. O'Neill, 1942, 147 Pa.Super. 153, 161, 24 A.2d 131; Farrell Estate, 1947 35 Del. Co.R. 433. See McCormick on Evidence, 654 (1954).

For the foregoing reasons the defendant's motion for summary judgment is hereby denied, and the decision of the Secretary is reversed. Claimant may submit an appropriate order granting the relief prayed in her complaint.